IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

QUENTRELL E. WILLIAMS,

                Plaintiff,                OPINION AND ORDER

v.

                                                14-cv-312-wmc

WARDEN TIM HAINES, *et al.*,

                Defendants.

---

      Pro se inmate Quentrell E. Williams has filed a proposed civil action pursuant to 42 U.S.C. § 1983, alleging that prison staff failed to protect him from harming himself on numerous occasions while he was incarcerated at the Wisconsin Secure Program Facility in Boscobel, Wisconsin. He also alleges that numerous officers caused him harm by using excessive force against him, subjecting him to harsh conditions of confinement, or by failing to intervene to protect him from harm caused by others. Because Williams has been granted leave to proceed *in forma pauperis* and has made an initial partial payment of the filing fee, the next step would normally be for the court to screen his complaint as required by 28 U.S.C. § 1915A. However, the court cannot conduct the required screening because Williams' complaint violates Rule 20 of the Federal Rules of Civil Procedure.

      Rule 20 prohibits litigants from bringing unrelated claims against different defendants in a single action. As explained in more detail below, Williams' complaint contains as many as eight, unrelated claims against different defendants. Accordingly, Williams must choose which lawsuit he wishes to pursue as Case No. 14-cv-312. Once

Williams has made his selection, the court will then screen that claim under 28 U.S.C. § 1915A. The other, unrelated claims will be dismissed without prejudice to bringing them in separate lawsuits, provided the applicable statute of limitations has not expired.

## ALLEGATIONS OF FACT[1]

**I. Parties.**

Williams is presently confined at the Waupun Correctional Institution in Waupun, Wisconsin. At all times pertinent to the complaint, however, he was confined at the Wisconsin Secure Program Facility ("WSPF") in Boscobel.

The defendants include the following individuals employed at WSPF: Warden Tim Haines; Officer Keith Wiegel; Officer T. Brown; Officer T. Belz; Officer Lentz; Officer Pelky; Officer Jones; Officer John Does 1 through 5; Lieutenant Tom; Lieutenant D. Esser; Captain Brown; Captain S. Mason; Psychologist Stacey Hoem; Crisis Worker J. Shannon-Sharpe; the WSPF Psychological Services Unit; the WSPF Security Department; Nurse Edge; Nurse J. Waterman; and Nurse Jane Does 1 through 5.

**II. Defendant Wiegel Allegedly Fails to Protect Williams from Harming Himself.**

WSPF has a policy mandating that meal trays and bags must be checked for spoons before being served to inmates in clinical observation. There is also a sign posted at the sergeant's station stating that inmates in clinical observation are not allowed

---

[1] In addressing any pro se litigant's complaint, the court must read the allegations generously. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). For purposes of this order, the court assumes the facts above based on the allegations in Williams' complaint.

spoons. On January 16, 2013, Williams was in clinical observation as a result of repeated suicide attempts. On that date, defendant Wiegel allegedly gave Williams a spoon at breakfast. Williams reported that he then sharpened the spoon and used it in an attempt to dig out a computer chip that he believed was planted into his wrist to track him inside the prison.

On January 29, 2013, Williams was again in clinical observation when he began hearing voices telling him to harm himself and that people were putting poisonous gasses in the air vents of his cell, among other things. When defendants Wiegel and T. Belz came to his cell to distribute medication at 6:30 a.m. that day, Williams told them about the voices and asked to speak to psychological services staff. Nevertheless, defendant Wiegel distributed Williams' medication and then gave him his breakfast, along with a spoon despite the fact that Williams had recently hurt himself with a spoon on January 16. Williams reports sharpening that spoon and using it to carve the words "HELP ME" into his left forearm.

### III. Defendant T. Brown Allegedly Fails to Protect Williams from Harming Himself.

On January 31, 2013, Williams was in clinical observation when defendant T. Brown gave him a spoon with his dinner. In doing so, Williams claims that Brown disregarded a sign posted on his door that said "no spoons allowed." After receiving the spoon, Williams sharpened it and began cutting on himself.

**IV.    Defendants Lentz Allegedly Fails to Protect Williams from Harming Himself, Defendant Esser Allegedly Harms Williams with a Chemical Agent, and Nurse Jane Doe Allegedly Fails to Intervene.**

On March 3, 2013, Williams was in clinical observation when defendant Lentz gave him a glass nasal spray bottle despite a WSPF and DOC policy that prohibits inmates in clinical observation from having glass bottles.  After receiving the glass bottle, Williams slammed it on the floor causing the glass to shatter.  He then began to eat the glass.  Lieutenant Esser then sprayed Williams with an incapacitating chemical agent despite the fact that Williams has asthma.  Nurse Jane Doe, who was allegedly present and knew that Williams had asthma, failed to intervene or prevent Esser from exposing Williams to this incapacitating agent.  Williams was treated at a local hospital in Boscobel for ingesting glass.

**V.    Defendant T. Belz Allegedly Fails to Protect Williams from Harming Himself.**

On April 14, 2013, Williams was in clinical observation when defendant T. Belz gave him a plastic bag along with his breakfast meal.  After receiving the plastic bag, Williams placed it over his head in an attempt to commit suicide.

**VI.    Defendant Brown Allegedly Harms Williams with a Chemical Agent, Nurse Waterman Allegedly Fails to Intervene and Hoem Allegedly Deprives Williams of a Mattress.**

On May 17, 2013, Williams was in clinical observation when he had a psychological breakdown, again based on a belief that he had a computer chip in his arm.  After smearing feces on his body, Williams attempted to dig the computer chip out of his

arm with his asthma inhaler.  Captain Brown then ordered another officer to spray Williams with an incapacitating chemical agent despite the fact that Williams has asthma.  Nurse Waterman, who was reportedly present and knew that Williams had asthma, failed to intervene or prevent Brown from exposing Williams to the incapacitating agent.  Defendant Hoem then directed Brown to take Williams' mattress, claiming that he was using it to hide during the incident.  Afterward, Williams was forced to go without a mattress through May 25, 2013.

**VII.   Defendant Esser Allegedly Harms Williams with a Chemical Agent and Nurse Jane Doe Allegedly Fails to Intervene.**

On May 25, 2013, Williams had another psychological breakdown in which he began hearing voices, seeing things and smearing feces around his cell.  Williams then went to sleep near the vent at the back of his cell.  The next thing Williams knew, his body was burning, his eyes were burning and he was unable to breathe (having again been sprayed with an incapacitating chemical agent by Lieutenant Esser).  Williams was given a decontamination shower and seen by a nurse.  Williams alleges that the nurse (Nurse Jane Doe) knew that he had asthma but failed to intervene or prevent Esser from exposing Williams to the incapacitating chemical agent.

**VIII.  Williams is Allegedly Denied Hygiene Items and Subject to Restrictive Conditions While on Clinical Observation.**

Williams alleges that he was confined in clinical observation without access to toilet paper, toothpaste, any type of toothbrush, soap, a shower or any type of hygiene

product from January 9 through 25, 2013, and again from January 26 through February 4, 2013. He asked correctional officers and shift supervisors for these items on numerous occasions.

On April 10, 2013, Williams was confined in clinical observation when he had a "[p]sychological break down," smearing feces all over his body, as well as the walls, windows, door and floors of his cell. From April 10 through April 14, 2013, he was not moved to a clean cell or given any type of cleaning materials and was expected to eat in this cell. Williams contends further that he was not allowed to shower from April 8 through April 28, 2013. During this time, he was forced to eat his food with his hands despite having nothing with which to clean himself.

While he was in clinical observation, Williams also alleges that defendant Shannon-Sharpe gave him a "seg smock" but denied him a "high security blanket." As a result, he was exposed to cold air, particularly during the colder months.

Additionally, while in clinical observation from April 14 through May 28, 2013, Williams was given a "no cup" restriction and a Styrofoam meal tray that had all of his food mixed together. He was not allowed to have orange juice, milk or ice cream like the other inmates even though he had done nothing to justify this type of restriction. When Williams complained to the unit manager, Captain Mason, he was told that he was being given cheese and oranges to substitute for milk and orange juice. He was also told that he would begin receiving a regular food tray when his behavior improved.

6

**IX.  Defendants Lieutenant Tom Allegedly Harms Williams with a Chemical Agent and Nurse Jane Doe Allegedly Fails to Intervene.**

On June 21, 2013, Williams attempted to hang himself with a bed sheet.  He was treated at a local hospital in Boscobel and then placed in clinical observation.  Shortly thereafter, on June 25, 2013, Williams tried to harm himself with his asthma inhaler and a tether that was used to secure him to his cell door while he was granted access to the inhaler.  Lieutenant Tom then sprayed Williams with an incapacitating chemical agent despite the fact that Williams has asthma.  Nurse Jane Doe, who was reportedly present during the incident, failed to intervene or prevent Tom from exposing Williams to the incapacitating agent.

**X.  Defendant Lieutenant Esser Allegedly Uses Excessive Force against Williams.**

While Williams was in clinical observation on June 25, 2013, he used his Styrofoam meal tray to block the window located at the front of his cell because he thought aliens were looking through the window at him.  When Lieutenant Esser arrived, he ordered Williams to come to the door to be handcuffed and removed from the cell.  Williams refused, and Esser ordered a cell extraction team to forcibly remove him from the cell.  Williams was placed in shackles and subjected to a thorough strip search.  When Williams resisted, he was tasered.  When Williams spit at Esser out of anger and frustration, Esser ordered one of the officers to slam Williams into the wall.  Williams maintains that he suffered bruises, swelling and pain from being handcuffed during this incident and that the force used was excessive to the need.

**XI.     Defendants Pelky, Jones and Nurse Edge Allegedly Fail to Protect Williams from Harming Himself**

While in clinical observation on June 25, 2013, Williams was placed in a "spit mask."  When Williams asked to use his asthma inhaler, Officers Pelky and Jones removed him from his cell and one of them sprayed it into his mouth for him.  The officers then returned Williams to his cell while still wearing the spit mask.  Williams then fashioned the spit mask into a noose to choke himself with it.  When Officer Pelky observed what Williams was doing with his spit mask, he summoned Nurse Edge.  Rather than intervene, however, Williams contends that Pelky and Edge just watched him while he choked himself into unconsciousness.

**XII.    Defendant Fischer and Esser Allegedly Harm Williams with a Chemical Agent and Defendant Nurse Jane Doe Allegedly Fails to Intervene**

On June 29, 2013, Williams again attempted to choke himself with the spit mask that he was wearing while in clinical observation.  When Officer Fischer saw Williams choking himself, she summoned Lieutenant Esser.  Esser then sprayed Williams with an incapacitating chemical agent despite the fact that Williams has asthma. After he lost consciousness from lack of oxygen, Williams claims that Esser began shooting "pepper balls from some type of gun that sounded like an assault rifle."  Williams was eventually given a decontamination shower and treated for "what looked like puncture wounds almost everywhere the pepper ball hit [him]."  Nurse Jane Doe, who was allegedly present during the incident, failed to intervene or prevent Esser from exposing Williams to the incapacitating agent.

**XIII. Defendant Haines Allegedly Has Failed to Protect Williams from Harm**

Williams alleges that Haines was aware of the continuous failure to protect him from self-harm and the repeated exposure to incapacitating chemical agents, but failed to correct these practices or prevent the harm from occurring.

OPINION

Fed. R. Civ. P. 20 prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. Multiple defendants may not be joined in a single action unless (1) the plaintiff asserts at least one claim to relief against each defendant that arises out of the same transaction or occurrence or series of transactions or occurrences; and (2) presents questions of law or fact common to all. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Williams' complaint includes more than a dozen claims against different sets of defendants ranging from failure to protect him from harming himself to excessive force to cell conditions. Unlike his later suit, Case No. 14-cv-821, which the court recently allowed to go forward, the events here span nearly six months.

Although Fed. R. Civ. P. 18 allows a party to join unrelated claims against defendants in a single suit, this rule applies only after the requirements for joinder of parties have been satisfied under Rule 20, *Intercon Research Assn., Ltd. v. Dresser Ind., Inc.*, 696 F.2d 53, 57 (7th Cir. 1983), which means that the core set of allowable defendants must be determined under Rule 20 before a plaintiff may join additional unrelated claims against one or more of those same defendants under Rule 18. Fed. R. Civ. P. 18(a).

Applying Rules 18 and 20 to Williams' complaint, his allegations may be grouped into eight possible, separate lawsuits consisting of the following claims:

- **Lawsuit #1: Claims against Wiegel and Belz**
    - Wiegel's alleged failure to protect Williams from harming himself on January 16, 2013;
    - Wiegel's and Belz's alleged failure to protect Williams from harming himself on January 29, 2013;
    - Belz's alleged failure to protect Williams from harming himself on April 14, 2013.

- **Lawsuit #2: Claim against T. Brown[2]**
    - Brown's alleged failure to protect Williams from harming himself on January 31, 2013.

- **Lawsuit #3: Claims against Lentz, Esser, Fischer and Nurse Jane Doe**
    - Lentz's alleged failure to protect Williams from harming himself on March 3, 2013;
    - Esser's alleged use of a chemical agent against Williams on March 3, 2013 and May 25, 2013;
    - Esser's alleged use of excessive force on June 25, 2013;
    - Esser and Fischer's alleged use of a chemical agent on June 29, 2013;
    - Nurse Jane Doe's alleged failure to intervene on March 3, 2013, May 25, 2013, and June 29, 2013.

- **Lawsuit #4: Claims against Captain Brown, Nurse Waterman and Stacy Hoem**
    - Captain Brown's alleged use of a chemical agent on Williams on May 17, 2013;
    - Nurse Waterman's alleged failure to intervene on May 17, 2013;
    - Hoem's alleged denial of a mattress from May 17 to 25, 2013.

- **Lawsuit #5: Claims against Lieutenant Tom and Nurse Jane Doe**
    - Tom's alleged use of a chemical agent against Williams on June 25, 2013;
    - Nurse Jane Doe's alleged failure to intervene on June 25, 2013.

- **Lawsuit #6: Claims against Pelky, Jones and Nurse Edge**
    - Pelky, Jones and Nurse Edge's failure to protect Williams from harming himself on June 25, 2013.

---

[2] Arguably, given the closeness in time and similar allegations -- providing a spoon to an individual known to self-harm --   these first two "lawsuits" might be combined.

- **Lawsuit #7:** **Claims against Shannon-Sharpe, Captain Mason, and John Does for denial of hygiene items and for restrictive conditions while on clinical observation.**

- **Lawsuit #8: Claim against Haines**
    - Haines' alleged failure to protect Williams from harm on an ongoing basis.[3]

Although each of Williams' claims are based on the legal theories that defendants either failed to protect him from harming himself or affirmatively caused him harm, these claims arise out of different transactions or occurrences. His claims involve distinct incidents that occurred at different times and involve different individual defendants. While the court has applied Rule 18 to group some of Williams' unrelated claims involving the same defendants, all of Williams' claims cannot all proceed in the same case under Rule 20. Williams will have to choose which of these lawsuits he wants to pursue in this case; the court will apply the initial, partial payment Williams has made to only that one. That lawsuit will be the only lawsuit assigned to this case number.

Williams may also choose to pursue the other lawsuits as well, but must do so separately, paying a separate filing fee for each lawsuit he chooses to pursue. In addition, he may be subjected to a separate strike under 28 U.S.C. § 1915(g) for any lawsuit that is dismissed for failure to state a claim upon which relief may be granted. Once a prisoner

---

[3] If narrowed to one of the more appropriately tailored "lawsuits" identified above, this claim against Warden Haines for failure to protect Williams from that harm might also be combined. Alternatively, Williams might pursue an individual lawsuit against Haines based on a general failure to protect Williams while incarcerated at WCI, assuming Williams can fairly allege the Warden's knowledge of indifference to the incidents described above (and related incidents) or at least a deliberate indifference to them.

receives three strikes, he is not able to proceed in new lawsuits without first paying the full filing fee, except in very narrow circumstances. 28 U.S.C. § 1915(g).

Alternatively, Williams may choose to dismiss the other lawsuits. If he chooses the latter route, he will not owe an additional filing fee or face a strike for the lawsuits he dismisses. A lawsuit dismissed voluntarily would be dismissed without prejudice, so Williams would be able to bring it at another time, so long as he files it before the statute of limitations has run.

Williams should be aware that because it is not clear at this time which of his separate lawsuits he will pursue, the court has not assessed the merits of the claims raised in any of the lawsuits identified above. Once Williams identifies the suit or suits he wants to continue to litigate, the court will screen the complaint as required under 28 U.S.C. § 1915A. Because Williams faces filing fees and potential strikes for each lawsuit pursued, he should consider carefully the merits and relative importance of each of his potential lawsuits before choosing to proceed with respect to some or all of them.

If Williams disagrees with the way the court has grouped his claims or if he believes the court has left out claims he intended to assert (or included claims he did not intend to assert), Williams may raise those objections in his response, but he must still comply with this order and choose which of the eight lawsuits he wishes to pursue. If he fails to do so, the court will dismiss all of his claims for his failure to prosecute the case.

ORDER

IT IS ORDERED that:

1) Plaintiff Quentrell E. Williams may have until November 12, 2015, to identify for the court which of the numbered lawsuits identified above he wishes to proceed with under the number assigned to this case. Plaintiff must pick one and only one of these lawsuits to proceed under Case No. 14-cv-312-wmc.

2) Williams may have until **November 12, 2015,** to advise the court whether he wishes to pursue either of the other lawsuits under separate case numbers. Any lawsuit not specifically identified to proceed will be deemed voluntarily withdrawn.

3) If Williams fails to respond to this order by **November 12, 2015**, the court will enter an order dismissing the lawsuit as it presently exists without prejudice for his failure to prosecute.

Entered this 22nd day of October, 2015.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge